**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

                                     CASE NO. 07-20490

        Plaintiff,                      HON. LAWRENCE P. ZATKOFF

v.

AMIR KARIM BEIGALI,

        Defendant.

_____/

**SENTENCING OPINION**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on April 15, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

On August 21, 2008, a jury found Defendant guilty of attempt to possess with intent to distribute a controlled substance (5 kilograms of cocaine) (Count I) and possession of a firearm in furtherance of the crime of attempt to possess with intent to distribute a controlled substance (Count II). Defendant submitted a sentencing memorandum in which he argues for a downward departure. The government submitted a response in opposition to Defendant's request for a downward departure. For the reasons set forth below, the Court sentences Defendant to 120 months on Count I and 25 years on Count II, to run consecutive to each other.

## II. BACKGROUND

Agents from the Drug Enforcement Agency ("DEA") received information from a confidential informant ("CI") regarding illegal drug activity involving Defendant. On September 27, 2005, DEA agents had the CI place a recorded call to Defendant. In this phone call, the CI

purported to be a distributor of cocaine with several kilograms of cocaine for sale. After Defendant indicated interest in purchasing several kilograms of cocaine, he agreed to travel from his home in Florida to discuss the transaction with the CI in Detroit, Michigan.

On September 29, 2005, Defendant called the CI to inform the latter that he arrived at Detroit Metropolitan Airport. The CI picked up Defendant from the airport while under DEA surveillance. Defendant and the CI negotiated the cocaine purchase at a restaurant while electronically monitored by DEA agents. Negotiations continued at a hotel in which Defendant had rented a room. Defendant represented to the CI that he could sell multiple kilograms of cocaine in Orlando, Florida. The CI informed Defendant that additional kilograms could be "fronted" provided that an initial transaction proceeded smoothly. Defendant expressed a desire for future transactions before returning to Orlando with the agreement that he would contact the CI once he obtained sufficient funds to purchase the cocaine.

In early October 2005, Defendant conversed with the CI three times regarding the purchase of kilograms of cocaine. During these discussions, it became clear that Defendant would not have enough cash to purchase even one kilogram of cocaine, which at that time had a street value between $18,000 and $20,000. At the behest of a DEA agent, the CI suggested to Defendant that a combination of cash and firearms might make the transaction possible. Defendant indicated that he would provide two nine-millimeter handguns, an AK-47 assault rifle, and $10,000 cash.

Defendant returned to Detroit on November 17, 2005. DEA agents observed Defendant exiting his hotel and followed him to a restaurant where he met with the CI. In a recorded conversation, the CI agreed to provide Defendant one kilogram of cocaine in exchange for the firearms and cash. At that time, the CI indicated a willingness to provide an additional four

2

kilograms of cocaine in the future, dependent on Defendant's success with the initial kilogram. Defendant and the CI proceeded to the parking lot in order to conduct the transaction at which time Defendant was arrested without incident.  DEA agents then seized the firearms and money from Defendant's trunk.

Several factors contributed to the lapse of time between Defendant's arrest and trial.  The government filed its complaint against Defendant on November 18, 2005, at which time a federal defender was appointed to represent Defendant.  On November 21, 2005, Defendant consented to detention pending trial.  On January 30, 2007, at the urging of Defendant, his court-appointed attorney filed a motion to withdraw as counsel, explaining that Defendant "believes a substitution of counsel is in his best interest."  Magistrate Scheer granted the motion on February 12, 2007, and Defendant was appointed a CJA Panel Attorney, Robert M. Kalec.  On August 8, 2007, however, at the urging of Defendant, Kalec filed a motion for withdrawal in which he explained that Defendant "believes that substitution of counsel is not in his best interest, and that only he can best represent himself."  Magistrate Scheer granted Defendant's motion and permitted him to represent himself on October 4, 2007.  On that same day, the government issued its two-count indictment against Defendant.  One week later, on October 11, 2007, the Court appointed Defendant a third attorney who promptly filed a motion to adjourn Defendant's final plea conference so that she could review the evidence of the case.  The Court granted the motion and adjourned the final plea conference until February 21, 2008.

On February 4, 2008, Defendant filed a motion to dismiss the indictment on the basis of pre-indictment delay.  The government responded that the delay in filing the indictment resulted generally from "settlement negotiations."  Finding this explanation unsatisfactory, the Court

dismissed the indictment but did so without prejudice given the severity of the Defendant's offense, the absence of dilatory conduct on the part of the government, and the fact that Defendant had not been prejudiced by the delay.  On May 7, 2008, the government filed its first superseding indictment for which Defendant was arraigned on May 12, 2008.  Defendant pleaded not guilty at his arraignment and again on the date of his final plea cutoff,  July 17, 2008.  The Court set the matter for trial on August 19, 2008, and Defendant was convicted on August 21, 2008.

### III.  PRE-SENTENCE REPORT AND GUIDELINES CALCULATIONS

By statute, Defendant may be sentenced to a term of imprisonment of up to life for Count I.  The Court has reviewed the Presentence Investigation Report in this case and notes the following computations set forth therein.  Defendant's Guidelines range for Count I was calculated based on five kilograms of cocaine, resulting in a base offense level of 32.  There were no adjustments upward or downward.  On account of Defendant's prior criminal record, he is classified at Criminal History Category IV.  Therefore, the calculated Guidelines range for Count I was 168 to 210 months.  In addition, Probation indicates that Defendant is subject to a statutory minimum sentence of 10 years for his conviction on Count I.  Defendant disputes the foregoing determinations.

With respect to Count II, Defendant is subject to an enhanced statutory minimum sentence of 25 consecutive years due to his previous conviction for a violation of 18 U.S.C. § 924(c). Defendant also disputes this determination.

### IV.  SENTENCING MEMORANDA

On November 17, 2008, Defendant submitted his sentencing memorandum in which he disputes the quantity of drugs and the possession of weapons for sentencing purposes.  Specifically, Defendant argues for a downward departure or a lowering of the Sentencing Guidelines range

because the drug quantity and the involvement of weapons resulted from the direction of the government's CI.  Therefore, Defendant contends that he should not be sentenced based on five kilograms of cocaine since he only was able to purchase one kilogram and in fact agreed to purchase only one kilogram of cocaine.  Similarly, Defendant argues that the involvement of weapons should not be considered in his sentence because it was the CI's idea to include them in the deal.

On December 17, 2008, the government submitted a response opposing the downward departure requested in Defendant's sentencing memorandum.  The government argues that Defendant wanted to obtain as much cocaine as possible and was dismissive of one kilogram of cocaine.  Therefore, according to the government, Defendant should be sentenced based on his intent and desire.

## V.  ANALYSIS

The overarching goal of the federal sentencing statute instructs the Court to "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. ___, 128 S. Ct. 558, 570 (2007) (internal quotation marks omitted).  The Court has thoroughly reviewed Defendant's file, paying particular attention to the Presentence Investigation Report, the sentencing memorandum filed by Defendant, and the government's response.  The Court finds Defendant's argument persuasive with respect to Count I but not with respect to Count II.  As there is a mandatory minimum sentence of 120 months with respect to Count I, however, the persuasiveness of Defendant's argument is rendered meaningless.

### A.    The Advisory Sentencing Guidelines

Defendant's Guidelines range for Count I (attempt to possess with intent to distribute) was calculated under USSG § 2D1.1.  Application note 12 to that provision states that if "the defendant

establishes that [he] . . . was not reasonably capable of providing or purchasing the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that [he] . . . was not reasonably capable of providing or purchasing."   Similarly, application note 14 provides for a downward departure when the government sets a price for a controlled substance considerably lower than its market value:

> If, in a reverse sting (an operation in which a government agent sells or negotiates to sell a controlled substance to a defendant), the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

Taken together, these application notes suggest that governmental actions should be carefully scrutinized when they result in a defendant possessing greater quantities of a controlled substance than he otherwise would have been able to possess.  *See also United States v. Stavig*, 80 F.3d 1241, 1247 (8th Cir. 1996) ("[reverse sting] cases require the most careful scrutiny and a probing examination by the district court").

Following the guidance of the application notes, courts routinely evaluate a defendant's circumstances to determine the quantity of a controlled substance that he was capable of purchasing. In *United States v. Anderson*, 76 F.3d 685, 691 (6th Cir. 1996), for example, the district court "recognized that the undervalued cocaine increased the amount of cocaine defendant bought. Accordingly, the court recalculated the amount of cocaine defendant would have purchased with the money he brought."  In that case, the government offered to sell the defendant cocaine at $9500 per

kilogram, but the defendant was accustomed to paying $22,500 for the same amount. The district court used the $22,500 figure to determine the amount of cocaine that the defendant could have purchased. In *United States v. Hicks*, No. 98-5382, 1999 U.S. App. LEXIS 30094, at *15 (6th Cir. Nov. 15, 1999), the Sixth Circuit remanded a case for re-sentencing because the district court unreasonably calculated the Guidelines range based on 50 kilograms when payment for the drugs was between $5000 and $6000, and the street value of 50 kilograms exceeded one million dollars.

In this case, Defendant had only $10,000 when he first attempted to procure cocaine. According to the government's CI, the street value of one kilogram of cocaine at that time was somewhere in the range of $18,000–$20,000. At the suggestion of the CI, Defendant secured three firearms. Together, the guns and $10,000 approximately covered the cost of one kilogram of cocaine. Under these circumstances, the Guidelines range for Count I should be computed based on one kilogram of cocaine rather than five because that is the amount that Defendant could have afforded and that is the amount he tried to purchase initially. Although Defendant ultimately desired multiple kilograms of cocaine, he consented to a veritable "trial run" whereby he purchased one kilogram of cocaine with the procurement of future kilograms dependent on his success in selling the initial kilogram. The government's argument that Defendant wanted to possess as much cocaine as possible is immaterial when considering that, at the time of his arrest, he only had the means to purchase one kilogram. Further, although Defendant's ultimate desire was to possess multiple kilograms of cocaine, in the transaction for which he was arrested, Defendant intended to exchange the cash and firearms for only one kilogram of cocaine. Defendant's attempt to possess one kilogram results in a base offense level of 26 rather than 32, and a Guidelines range of 92–115 months instead of 168–210 months. As discussed in Section V.B., *infra*, the lower Guidelines range

7

does not benefit Defendant because of the mandatory minimum sentence in this case.

With respect to Count II (possession of a firearm in furtherance of the crime of attempt to possess with intent to distribute a controlled substance), however, Defendant's argument is not persuasive. Although the firearms entered the discussion at the behest of the government's CI, Defendant actually acquired and transported them with the intent to trade them, along with the cash, for cocaine. The concerns surrounding the manipulation of drug quantities to impact sentencing do not exist in the context of firearms. Defendant has not provided the Court with, nor has the Court uncovered, any authority suggesting that the presence of firearms in a drug transaction be discounted when it was first suggested by individuals working for the government. Therefore, Defendant's argument does not impact his Count II conviction, which carries a mandatory minimum of 25 years, consecutive to any other sentence imposed.

### B.      Count I - 10 year Mandatory Minimum Sentence

21 U.S.C. § 841(b)(1)(A) provides that in a case where there is a violation of 21 U.S.C. §841(a)(1), Attempting to Possess with Intent to Distribute 5 Kilograms or More of Cocaine, which involves 5 kilograms or more of cocaine, the defendant "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . ." As the jury has convicted Defendant of a violation of 21 U.S.C. § 841(a)(1) involving 5 kilograms or more of cocaine, this Court finds that it is constrained, and has no choice other than, to sentence Defendant to a minimum of 10 years (120 months) for his conviction on Count I. 18 U.S.C. § 3553(e) and (f) permit a district court to impose a sentence below a statutory minimum *only if*: (1) the government so moves pursuant to applicable statute, asserting the defendant's substantial assistance to the government, or (2) the defendant meets the statutory "safety valve" criteria set forth by the United States

8

Sentencing Commission. *See, e.g., United States v. Krumnow*, 476 F.3d 294, 297 (5th Cir. 2007). Therefore, despite the re-calculation of the Guidelines range as discussed in Section V.A.*, supra*, this Court could only sentence Defendant to a term of imprisonment less than 120 months if one of the two elements described above are satisfied.  In this case, the government has made no motion regarding substantial assistance by Defendant, and Defendant can not satisfy the "safety valve" criteria (*e.g.,* he has more than one criminal history point).  The Court therefore must sentence Defendant to at least 120 months imprisonment on Count I.

C.      18 U.S.C. § 3553(a)(1) Factors

Section 3553(a)(1) instructs that the Court is to consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]"  The nature and circumstances of the offenses to which Defendant was found guilty are serious.  He wanted to obtain a significant quantity of drugs to sell in Orlando, Florida.  At trial, Defendant showed no regard for the impact cocaine would have on prospective purchasers, including children.  Defendant testified that he wanted to get rich as quickly as possible.  Moreover, Defendant procured three firearms, which he presented to a man whom he thought to be involved in the drug-trade business.

At trial, Defendant argued that he had been entrapped by the government.  The circumstances of his case establish conclusively that this was not the case.  In order to defeat a claim of entrapment, the prosecution must prove that the defendant was predisposed to commit the crime.  *Dixon v. United States*, 548 U.S. 1, 24 (2006).  Beyond that, it must be established that the government, or someone acting at the government's direction, persuaded or induced the defendant to commit the crime.  *Sosa v. Jones*, 389 F.3d 644, 647 (6th Cir. 2004).  Although Defendant was first contacted by a government CI, he showed not reluctance but eagerness.  Further, in the short time that

9

Defendant has been an adult and not imprisoned, he was convicted of possessing drugs and selling counterfeit substances in lieu of controlled substances. Defendant was predisposed to commit the crimes he committed, and his entrapment defense necessarily fails.

In addition to Defendant's prior drug convictions, he was convicted of armed robbery of a bank. Defendant persistently displays a disregard for the consequences of his actions, prioritizing financial gain above all else. Defendant conveyed no remorse for his actions.

Defendant contends that his participation in various programs and classes, including several tailored to parenting, evidences his commitment to reform. Yet, the majority of these classes and programs occurred prior to the present offense. Defendant disregarded whatever lessons he learned in favor of pursuing his goal of entering the Orlando cocaine market.

**D.     18 U.S.C. § 3553(a)(2) Factors**

Selling narcotics and firearms are serious offenses that demand stern sentences, especially when, as here, the defendant has previously engaged in drug and firearm offenses. Defendant was released from custody for armed robbery on August 22, 2003, and while on supervised release, committed the present offenses. Defendant evinces consistent disrespect for the law and the prior punishments he has received have proven to be insufficient. Further, Defendant's offenses include the use and distribution of firearms and thus trigger significant concerns for the public's safety. To date, the educational and vocational training Defendant received while incarcerated has been fruitless. Defendant will benefit from more extensive training and education.

10

## VI.  CONCLUSION

For the reasons set forth above, it is HEREBY ORDERED that Defendant shall be sentenced

to 120 months on Count I and 25 years on Count II, to run consecutive to each other.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  April 15, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record
by electronic or U.S. mail on April 15, 2009.


S/Marie E. Verlinde
Case Manager
(810) 984-3290